UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHAD BARNETTE, | ) | Case No. 4:09CV1005 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | (Magistrate Judge McHargh) |
| BENNIE KELLEY, | ) | |
| Warden, | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Chad Barnette ("Barnette") has filed a petition for a writ of

habeas corpus, under 28 U.S.C. § 2254, regarding his 2002 convictions in the

Mahoning County (Ohio) Court of Common Pleas for attempted aggravated murder,

aggravated burglary, aggravated robbery, kidnapping, and other felonies.  (Doc. 1.)

In his petition, Barnette raised four grounds for relief:

1.  Petitioner's right to due process of law and trial by jury as
guaranteed by the Fifth, Sixth and Fourteenth Amendments to the
United State's Constitution, was violated when he received an 84-year
prison sentence in response to his election of a jury trial.

2.  The imposition of non-minimum and maximum sentences for
multiple felony convictions violates the Sixth Amendment to the
United States Constitution.

3.  Petitioner's constitutional right to due process of law and the protection against the imposition of ex post facto law as guaranteed by the Due Process and Ex Post Facto Clauses of the United States Constitution, were violated when the trial court imposed non-minimum, maximum and consecutive sentences.

4.  Petitioner was denied the effective assistance of trial and appellate counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United Constitution when counsel failed to object to Petitioner's illegal sentence at trial and raise the issue on appeal.

(Doc. 1, § 12.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural

background:

Appellant's conviction arose from events which occurred on January 29, 2001.  On that day, Appellant, along with co-defendant James Goins, attacked William Sovak, age 84, as he was picking up his daily newspaper outside his home in Youngstown, Ohio.  Appellant and Goins were both juveniles at the time.  The two assailants repeatedly pushed, hit, and kicked Mr.  Sovak, knocking him to the ground many times.  They hit Mr. Sovak on the head with his telephone.  They took Mr. Sovak to his kitchen, while continuing to beat him.  They found a set of keys in the kitchen, which they took.  They then pushed Mr. Sovak down the stairs to his basement, where he lost consciousness. Later, the assailants dragged Mr. Sovak to a fruit cellar storage room in the basement and locked the door so that he could not escape.  That evening, a neighbor of Mr. Sovak telephoned Jerome Jablonski (the victim's half-brother) to report that there was blood all over Mr. Sovak's house.  Mr. Jablonski and his brother went to the house and found a trail of blood from the front door to the basement.  Mr. Jablonski broke the lock on the fruit cellar and found Mr. Sovak inside. Sovak had sustained a punctured lung, broken ribs and other broken bones.

Also on January 29, 2001, Louis Luchisan, age 64, and his wife Elizabeth, were in their home in the same neighborhood as Mr. Sovak.

2

Mr. Luchisan, who was confined to a wheelchair, was working at his computer when Appellant and Goins kicked in the side door of his house. One of the men was carrying a firearm. The two assailants asked for money. They then hit Mr. Luchisan over the head with a plate. Mrs. Luchisan saw blood flowing down her husband's head and shirt from the injury. Appellant and Goins took Mrs. Luchisan to various rooms in the house looking for money. Mrs. Luchisan gave them about $167, while Mr. Luchisan gave them $20. Appellant, the taller of two assailants, began hitting Mrs. Luchisan in the head and legs with the gun. They also hit Mrs. Luchisan with a telephone, and threatened to kill her. She later had to have staples put into her head as a result of the injuries.

Appellant and Goins took the Luchisans' car, as well as a 27-inch television set. The police were notified to be on the lookout for the stolen vehicle.

The car was spotted as the police were still inspecting the two crime scenes. Officer Joshua M. Kelly, who was on foot, saw the vehicle and pulled out his service firearm. The car suddenly veered and crashed into a tree. There were four people in the car, including Appellant in the back seat and Goins in the front passenger seat. Officers also found a sawed-off rifle in the vehicle, similar in appearance to the weapon used at the Luchisan home. Goins fled the car after the crash, and was captured soon afterward.

Police found the keys to the Sovak's home when they were searching Goins' home. The tread of Appellant's shoes also matched shoe tread marks that were left at the crime scene.

On February 5, 2001, a juvenile delinquency complaint was filed against Appellant alleging twelve counts, including the attempted murder, aggravated burglary, aggravated robbery, kidnapping, felonious assault, and receiving stolen property. The state filed a motion to transfer the case to the adult division of the Mahoning County Court of Common Pleas. After a bindover hearing, the juvenile court found probable cause for all the offenses except for the kidnapping charges. The juvenile court then bound the case over to the Mahoning County Grand Jury.

On March 22, 2001, the Mahoning County Grand Jury indicted Appellant on: 1) attempted aggravated murder of Mr. Sovak; 2) aggravated burglary of Mr. Sovak; 3) aggravated robbery of Mr. Sovak;

3

4) kidnapping of Mr. Sovak; 5) aggravated burglary of the Luchisans;
6) aggravated robbery of Mr. Luchisan; 7) aggravated robbery of Mrs.
Luchisan; 8) kidnapping of Mr. Luchisan; 9) kidnapping of Mrs.
Luchisan; 10) felonious assault of Mr. Luchisan; 11) felonious assault
of Mrs. Luchisan; 12) and receiving stolen property, i.e., the Luchisans'
automobile.  Four of the counts contained gun specifications.  The court
consolidated the matter with the criminal case proceeding against
co-defendant James Goins.

On November 28, 2001, Appellant and Goins filed writs of habeas
corpus with this Court, challenging whether the Mahoning County
Court of Common Pleas, General Division, had jurisdiction over the
criminal charges that were not bound over from the juvenile division.
Goins v. Wellington, 7th Dist. Nos. 01 CA 208, 01 CA 210,
2001-Ohio-3503 (Goins I ).  We denied both writs on December 18,
2001, and the case proceeded to jury trial beginning on March 4, 2002.

On March 12, 2002, the jury found Appellant guilty as charged except
on the one count of felonious assault against Mrs. Luchisan.  The jury
also found Appellant guilty of the gun specifications in counts six,
seven, eight and nine.

A sentencing hearing was held on March 20, 2002.  The trial court filed
its judgment entry on March 21, 2002.  The court sentenced Appellant
to the maximum prison terms on each count, and three years in prison
on each gun specification.  The court held that the kidnapping charges,
and related gun specifications, merged with the robbery charges.  The
court also determined that all remaining sentences must be served
consecutively to each other, for a total of 85 1/2 years in prison.

(Doc. 5, RX 28, at 1-4; State v. Barnette, No. 02CA65, 2004 WL 3090228, at *1-*2

(Ohio Ct. App. Dec. 28, 2004).)

Barnette filed a timely direct appeal, and presented the following

assignments of error:

1. The court erred when it failed to dismiss counts four (4), eight (8)
and nine (9) of the indictment.  The court was without jurisdiction to
proceed since no proper transfer proceedings from the juvenile court
occurred.

4

2. The trial court committed prejudicial error when it failed to merge, for the purpose of sentencing, count six (6), aggravated robbery of louis Luchesan with count twelve (12), receiving stolen property (Luchesan's car taken during his robbery) since they were allied offense of similar import.

(Doc. 5, RX 18.)

Barnette, represented by new counsel, also filed the following supplemental assignments of error:

3. The trial court's determination of Chad Barnette's 85.5 year term of incarceration violated the Due Process Clause of the United States Constitution because it had been fixed by anticipatory judgment months in advance of trial and was explicitly weighed to punish Mr. Barnette for exercising his right to a jury trial.

4. The trial court's determination of Chad Barnette's 85.5 year sentence was entered in violation of R.C. 2929.11(B), R.C. 2929.14, and 2929.19, because the trial court based its imposition of maximum, consecutive sentences on inappropriate criteria and in violation of Ohio law and due process.

5. The trial court erred when it imposed non-minimum, maximum, and consecutive sentences based on facts not found by the jury or admitted by Mr. Barnette, in contravention of Blakely v. Washington (2004) __ U.S. __, __ L.Ed.2d __, 124 S.Ct. 2531, 2004 WL 1402697, and Mr. Barnette's Sixth Amendment right to trial by jury.

(Doc. 5, RX 20, 24, 26.)

On December 28, 2004, the court of appeals affirmed Barnette's conviction, but reversed his sentence, holding that he should not have been sentenced on the receiving stolen property charge as it was based upon the same property as was an aggravated robbery charge for which he was also sentenced.  The court of appeals modified his sentence.  (Doc. 5, RX 28, at 33-34; State v. Barnette, No. 02CA65, 2004 WL 3090228, at *17 (Ohio Ct. App. Dec. 28, 2004).)

5

The state moved for reconsideration, which was denied by the court of appeals, with the exception of a clerical error, which was corrected nunc pro tunc. (Doc. 5, RX 30; State v. Barnette, No. 02CA65, 2005 WL 293804 (Ohio Ct. App. Feb. 2, 2005).)

On February 2, 2005, Barnette appealed the decision affirming his conviction to the Ohio Supreme Court.  (Doc. 5, RX 31.)  Barnette set forth the following propositions of law:

> 1. A trial court that fails to articulate and align its specific reasons in support of the statutory findings for maximum and consecutive sentences at the sentencing hearing denies the defendant due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, and section 16, Article I of the Ohio Constitution.
>
> 2. When a trial court's decision to impose maximum and consecutive sentences is based on the defendant's exercising the right to a jury trial, the trial court contravenes the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and Section 16, Article I of the Ohio Constitution.
>
> 3. A trial Court's imposition of maximum and consecutive sentences on a first-time felony offender, based on facts not found by the jury or admitted by the accused, contravenes the offender's right to trial by jury, as guaranteed by the Sixth Amendment to the United States Constitution. Blakely v. Washington (2004) 542 U.S. __, 124 S.Ct. 2531, 159 L.Ed.2d 403, 2004WL1402697.

(Doc. 5, RX 32).

The state filed a cross-appeal, and set forth the following propositions of law:

> 1. The crimes of Receiving Stolen Property and Aggravated Robbery are not, in this case, allied offenses of similar import and, therefore, the trial court properly imposed separate sentences.

> 2. The reviewing court abused its discretion when it modified the trial court's sentence for the crime of Aggravated Robbery from the maximum and consecutive term to the minimum to be served concurrently to the remaining sentence.

(Doc. 5, RX 34.)

The Ohio Supreme Court accepted the appeal on Barnette's third proposition of law, but denied the other claims by both parties.  The case was held for the court's decision(s) in State v. Quinones and State v. Foster.  (Doc. 5, RX 36.)

On May 3, 2006, the Supreme Court of Ohio remanded to the trial court for resentencing consistent with its decision in State v. Foster.  (Doc. 5, RX 37; In re Ohio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313, 847 N.E.2d 1174 (2006).)

The trial court subsequently held a new sentencing hearing, at which Barnette was sentenced to a total term of incarceration of eighty-four years.  (Doc. 5, RX 38.)  On Aug. 20, 2006, Barnette appealed the re-sentencing, rasing the following assignments of error:

> 1. The court erred and abused its discretion in sentencing the defendant to eight-four (84) years.

> 2. Defendant's sentence of eighty-four (84) years is cruel and unusual punishment in violation of the Eighth Amendment to the U.S. and Ohio Constitution.

(Doc. 5, RX 40.)  On Dec. 21, 2007, the court of appeals affirmed the judgment of the trial court.  (Doc. 5, RX 42; State v. Barnette, No. 06MA135, 2007 WL 4696834 (Ohio Ct. App. Dec. 21, 2007).)

7

Barnette appealed to the Supreme Court of Ohio on Jan. 31, 2008, setting

forth the following propositions of law:

> 1. The imposition of non-minimum, maximum, and consecutive prison
> term for multiple felony convictions contravenes the Sixth Amendment
> to the United States Constitution. Blakely v. Washington (2004).
>
> 2. The remedy that this Court set forth in State v. Foster, 109 Ohio
> St.3d 1, 2006-Ohio-856, violates the Ex Post Facto and Due Process
> Clauses of the United States Constitution.
>
> 3. When an appellate attorney fails to raise important constitutional
> challenges to a trial court's imposition of sentence in a criminal
> defendant's direct appeal as of right, the attorney renders
> constitutionally inadequate assistance, in contravention of the
> Fourteenth Amendment to the United States Constitution, and Section
> 16, Article I of the Ohio Constitution.

(Doc. 5, RX 44.)  On May 21, 2008, the state high court denied Barnette leave to

appeal.  (Doc. 5, RX 46; State v. Barnette, 118 Ohio St.3d 1409, 886 N.E.2d 872

(2008).)

Barnette filed a timely petition for a writ of habeas corpus in this court.


## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405.  See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect.  Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law.  Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III.  EXHAUSTION AND PROCEDURAL DEFAULT

The respondent argues that the first three grounds of the petition, and a portion of the fourth, are barred as procedurally defaulted.  (Doc. 5, at 8-14.)

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies.  Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)).  To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)).  A petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.  Coleman, 501 U.S. at 731-732; Buell, 274 F.3d at 349.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

10

miscarriage of justice." Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); see also Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Cir. 2008).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

The respondent points out that, although the contested grounds were presented in Barnette's first direct appeal, they were not raised in the appeal of his resentencing.  (Doc. 5, at 8-14; see generally doc. 5, RX 40.)  The court finds some merit in this argument; however, the court must address a more fundamental issue.

## IV.  MOOTNESS

Upon consideration of the arguments presented by the parties, see, e.g., doc. 10, at 9, the court notes another problem.

11

Barnette filed his petition for a writ of habeas corpus through counsel.  (Doc. 1, at p. 13.)  The petition alleges that the judgment of conviction being challenged is the judgment of March 13, 2002, with a sentencing date of March 21, 2002.  (Doc. 1, at §2.)  The judgment of resentencing is not mentioned in the section of the petition setting forth "the judgment of conviction you are challenging."  Id. at § 1.  An examination of the supporting facts for the four grounds of the petition supports a finding that the 2002 judgment is being challenged in the petition itself.  See generally doc. 1, at pp. 18-23.

The first ground of the petition, for example, alleges due process violations on the basis that Barnette was sentenced harshly "in response to his election of a jury trial."  (Doc. 1, at p. 18.)  In support of that ground, Barnette quotes from the March 20, 2002, sentencing hearing, to "demonstrate that the trial court explicitly punished Mr. Barnette for exercising his right to a jury trial."  (Doc. 1, at pp. 18-19. quoting sentencing transcript[1].)  Thus, that ground clearly relates to the original 2002 sentencing.

The second ground of the petition claims that Barnette's sentence violates his Sixth Amendment rights.  The argument would apply to his 2002 sentencing, and was in fact raised on direct appeal.  See doc. 5, RX 24.  He argues that the trial court failed to properly apply Ohio Rev. Code §§ 2929.14(B) and (C).  (Doc. 1, at pp.

---

[1]  The transcript of the March 20, 2002, sentencing hearing is not before this court.  However, the same portion quoted in the petition is also quoted by the state court of appeals.  See doc. 5, RX 28, at 18; Barnette, 2004 WL 3090228, at *9.

19-20.)  In addition, "the trial court's imposition of nonminimum, maximum, and consecutive prison terms" violated his Sixth Amendment rights, as articulated by the Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004), and United States v. Booker, 543 U.S. 220 (2005).  (Doc. 1, at p. 20-21.)

The third ground argues that the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), violates the Due Process and Ex Post Facto Clauses of the United States Constitution.  (Doc. 1, at 21-22.)  As to Barnette himself, he claims that when he was resentenced, "the presumption that he receive a minimum prison term was gone."  Id. at 22.  This  argument appears to relate to the remand for resentencing.  See, e.g., doc. 5, RX 37; In re Ohio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313, 847 N.E.2d 1174 (2006).)

The fourth claim is ineffective assistance of trial or appellate counsel, as to a defense to a possible procedural default of the third ground, "because the deficient failure of counsel to raise the issue properly prejudiced Mr. Barnett by denying him a new sentencing hearing at which his sentence could not get worse."  (Doc. 1, at p. 23.)  The court is uncertain of the meaning of this statement on its face.  The Blakely argument was raised on his original direct appeal, by new appellate counsel.  (Doc. 5, RX 24.)  Moreover, Barnette was not denied a new sentencing hearing, as the trial court subsequently did hold a new sentencing hearing in 2006 (doc. 5, RX 38), thus presumably the fourth ground relates to the 2002 sentencing as well.

13

Habeas corpus relief is available only to a prisoner who is in custody pursuant to the court judgment which is challenged by the petition. Steverson v. Summers, 258 F.3d 520, 522 (6th Cir. 2001); Ward v. Oklahoma, 376 F.2d 847 (10th Cir. 1967) (per curiam). The habeas statute requires that the petitioner "be 'in custody' under the conviction or sentence under attack at the time his petition is filed." Steverson, 258 F.3d at 522 (quoting Maleng v. Cook, 490 U.S. 488, 490-491 (1989) (per curiam)).

Barnette's petition, filed through counsel, specifically alleges that the judgment being challenged is the judgment of March 2002. (Doc. 1, at §2.) Barnette did not attempt to file an amended petition at any point. Any arguments expanding on the grounds of the petition, or first presented, in the traverse are not properly before this court. Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005), cert. denied, 547 U.S. 1074 (2006) (citing cases); Jones v. Bagley, No. C-1:01CV564, 2010 WL 654287, at *37 (S.D. Ohio Feb. 19, 2010). "A traverse is decidedly not an appropriate vehicle for amendment of a habeas petition." Hasan v. Ishee, No. 1:03CV288, 2006 WL 3253081, at *53 (S.D. Ohio Aug. 14, 2006).

Barnette's petition challenging his 2002 sentencing is moot, because he is not in the custody of the State of Ohio pursuant to that 2002 sentence. See, e.g., Whatley v. Smith, No. 1:08CV1632, 2009 WL 4282926, at *24 (N.D. Ohio Nov. 30, 2009); Pruitt v. Wilson, No. 1:06CV3048, 2008 WL 5378341, at *1-*2 (N.D. Ohio Dec. 19, 2008). Rather, he is in custody because of the 2006 resentencing.

14

The petition is barred because his petition no longer presents a case or controversy based on the 2002 sentencing.  Habeas review is barred not due to procedural default, but because the petition is moot in light of the 2006 resentencing.  Although the resentencing hearing imposed essentially the same sentence, the petition challenges his 2002 sentencing, and Barnette has not amended the petition to revise his statement of the judgment of conviction challenged.  See generally Pruitt, 2008 WL 5378341, at *2.

## V.  MERITS

Even if Barnette's petition was amended to properly challenge his 2006 resentencing, he would not fare better on the merits.

This court has repeatedly rejected arguments that the Foster decision resulted in violations of the Due Process and Ex Post Facto Clauses of the United States Constitution.  See, e.g., Allen v. Hudson, No. 1:08CV1825, 2009 WL 5178315, at *5-*6  (N.D. Ohio Dec. 29, 2009); Torres v. Beightler, No. 1:09CV191, 2009 WL 2705880, at *4 (N.D. Ohio Aug. 27, 2009); Schaub v. Brunsman, No. 1:08CV2522, 2009 WL 2143746, at *5 (N.D. Ohio July 16, 2009) (citing cases); Woody v. Welch, No. 3:08CV2534, 2009 WL 1440828, at *8-*9 (N.D. Ohio May 20, 2009) (noting that Miller v. Florida, 482 U.S. 423 (1987), involved retroactive application of legislative enactment).  See generally State v. Elmore, 122 Ohio St.3d 472, 912 N.E.2d 582 (2009), cert. denied, 130 S.Ct. 1025 (2009) (finding resentencing pursuant to Foster

does not violate Sixth Amendment right to jury trial, or Ex Post Facto or Due

Process Clauses of U.S. Constitution).

In addition, the U.S. Supreme Court recently ruled that the Sixth

Amendment does not prohibit judges from imposing consecutive, rather than

concurrent, sentences.  Oregon v. Ice, 129 S.Ct. 711 (2009); Adams v. Kelly, No.

4:09CV137, 2009 WL 5061766, at *11 (N.D. Ohio Dec. 15, 2009); Shie v. Smith, No.

1:08CV194, 2009 WL 385617, at *3 (N.D. Ohio Feb. 13, 2009).

Barnette raises the issue of ineffective assistance of counsel only with regard

to a possible procedural default or waiver of his third ground, which challenges

Foster.  The court is not applying a procedural default analysis, thus that issue does

not arise.

As to the first ground, Barnette failed to demonstrate that the state court

decisions were contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States.

See generally United States v. Grayson, 438 U.S. 41, 50 (1978) (sentencing judge

may legitimately consider evidence heard during trial); Hill v. United States, 368

U.S. 424, 430 (1962) ("The sentence in this case was not illegal.  The punishment

meted out was not in excess of that prescribed by the relevant statutes, multiple

terms were not imposed for the same offense, nor were the terms of the sentence

itself legally or constitutionally invalid in any other respect"); see also Corbitt v.

New Jersey, 439 U.S. 212, 223-224 (1978) (constitutional propriety of extending

leniency in exchange for guilty plea of guilty, and of not extending leniency to those

16

who have not demonstrated  attributes on which leniency based).  It is worth noting that the source of "clearly established federal law" in the habeas context is limited to U.S. Supreme Court  jurisprudence.  Williams, 529 U.S. at 412.

## VI.  SUMMARY

The petition for a writ of habeas corpus should be denied as moot.  The petition alleges that the judgment being challenged is the judgment of March 2002 (doc. 1, at §2), but Barnette is not in the custody of the State of Ohio pursuant to that 2002 sentence.

## RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.


Dated:   Dec. 3, 2010          /s/ Kenneth S. McHargh
                              Kenneth S. McHargh
                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

17